Good morning, Your Honors. In this case, the judgment should be reversed for a new trial granted. With respect to non-infringement, the trial court construed the term Substantially Monolithic Dielectric Body, or SMD. You know, the problem with asking us to deal with 20 issues is you don't get to talk about the one you want. Why was there no injunction in this case? Because there was no competition in these products. There was no irreparable harm. What do you mean no competition in the products? These are both capacitors. Yes, sir, but there's vast differences in capacitors and the way capacitors are rated in the marketplace. Understand that. And yet, I think I'm going to hear from your competitors in a moment that they are your competitors. But they're not. The records, prospectively, the records don't show that. Well, but that's a fact question, isn't it? Yes, sir. And the jury... Was there a factual finding that they're not competitors? That's what the trial court said. They do not compete in the high-end market that was created by ATC. Where's your false marketing claim stand, then, under American events? Under American events, we can show competitive damage. How can you show competitive damage if you're not competitors? Excuse me, but I'm slow. Help me with that. I'm sorry, Ron. There's a generic class of competitors, of capacitors. So you are competitors in the generic class. We're competitors. So the trial judge could have been correct when she said, on the one hand, you are competitors sufficiently for the damages award, but you're not the kind of competitors that warrants an injunction. Is that right? That's correct. Okay. But with regards... What she said. Yes. You agree with that? I don't think we compete in the high-end market at all. Well, that's clear. They... In which case, are you saying you're not competitors? We both sell capacitors. In the generic market, we're competitors. Their device has an insertion loss that's three times ours. In the high-end market, those are devices that are markedly different. How does the notice of intent to issue an expiry reexamination certificate that came out July 1st, 2011, pertaining to 356, affect your position on appeal? I don't think it does, Your Honor. It pulls... Does it affect any of your invalidity contentions or inequitable conduct? It pulls numerous references off the table with respect to inequitable conduct, but that's the only effect it has. So you're conceding that much? It doesn't pull all the references off. It doesn't pull off the 433, Your Honor. With respect to non-infringement, their expert testified three times that there are no scenes in the 545 capacitor. Back to the competition, no competition question. If you are indeed trespassing on some of their markets, why no injunction? I don't believe we're trespassing on any of their markets, Your Honor. And in fact, there has been no loss of profits shown. There has been no loss of customers shown. We have totally independent customers. Their sales have gone up. Our sales have finally started to go up after all this business with the false marking. We don't compete. It's not the same class of customers. It's not even the same challenge of trade. 20% of our capacitors are sold to a distributor who buys for his own account. We simply don't sell to the same customers. And the point is, our capacitors are used in the very high-end market. They have military uses, they have space uses, they have test equipment uses, and public policy would seem to need to preclude an injunction from issue. And you said there were no loss of profits. The jury awarded loss of profits, did it not? The jury awarded loss of profits. They did. I don't think... You don't think you're entitled to those? I don't think the jury should have awarded loss of profits because I don't think the four requirements of Pandewood are met. Going back, if I may, for just a moment, to the opening comment of Chief Judge Grader, I had a little bit of the same problem that he indicated, which is trying to figure out what it is you're really appealing because you listed 12 issues. Basically, you want us to retry the entire case. If you had to pick one issue or even two, that you think you could get a reversal on and you really care about, could you help identify those? Yes, sir. Non-infringement. Non-infringement, okay. And the anticipation by virtue of inheritance. Those are the two big issues that you want us to deal with. Yes, sir. Okay, fine. You want to talk about them? I would like to. With respect to non-infringement, their expert admitted three times that... Dr. Ewell? Dr. Eubner. He was their infringement expert. The trial court construed the term substantially monolithic body as a dielectric body, largely but not wholly, without scenes from the inclusion of plates within the dielectric body. Dr. Eubner testified three times, there are no seams in the 545L capacitor. To try and save the day, Dr. Eubner was asked a hypothetical. And the hypothetical was, if the definition of seams includes porosity and the voids associated with that, would there be seams in the 545L? He indicated that porosity wouldn't be used for a definition of seams. Now, your problem here is this is anticipation, which is a question of fact. And you've got a jury has found that it was not anticipated. You've got a judge which has reviewed that and upheld the jury's finding. And then as my colleague pointed out, the patent office has taken another look at this and not only did they allow these claims, they added more claims. Judge Rader, I'm talking about non-infringement and I think this falls squarely within the John Hopkins versus Datascope where you have an expert who... Non-infringement is once again a factual issue. We can go through the same litany of jury making a factual finding upheld by the judge. The jury shouldn't be able to rest on facts where the expert contradicts himself on the record. And worse, in this case, we were placed in a position where the trial court said there's no prejudice because we objected to this testimony in the hypothetical. And then later, the trial court, in saying there's no prejudice, caused us to lose the presumption of prejudice that the Ninth Circuit imposes for erroneous instructions. Mr. Giddes, a number of the issues you appealed among the dozen are objection to what was directly a jury instruction that you request. How do you get past that? I don't believe that's correct, Judge Wallace. Now, Judge, Dr. Huebner testified that the without seams limitation is met because the plates, voids, and porosity found in the capacitor amount to seams, which is also what the claim construction said. So that seems to be sufficient evidence to support the verdict. That's the hypothetical, Your Honor. And Dr. Huebner also testified that the porosity is a function of the ceramic, and it's not from the insertion of plates. But see, our standard of review tells us that if there's evidence to support the verdict, we must support it. I just gave you some evidence that supports the verdict. You'd like us to look at other evidence, but that gets into us not having the authority to overturn fact findings just because there are inherent, there's some conflict in the testimony. But his testimony contradicts his conclusion of infringement. And therefore, his testimony shouldn't have been considered by the jury, and it should have been reversed on JMOL. I took you a step past. The jury instructions were based on the claim terms, and for example, the claim term substantially adopted ATC's proposed construction with regard to that claim. Did it not? And there are a number of them where they specifically adopted your proposed construction. Yes, sir, but then the terminology was changed in testimony. The court construction didn't stand well when testimony was elicited. For example, in the case you're talking about, it was scenes from the inclusion of plates. So the jury chose to believe something else. They were confused. Dr. Huebner was given a hypothetical which says if you have porosity, and porosity comes from using the ceramic, not from the insertion of plates, will that cause scenes? And he says, well, with that hypothetical, you'll get a few, but I wouldn't use the word scenes to discuss porosity. One of the purposes of a trial is to unconfuse the jury on one side and to confuse it on the other side, depending upon which way the arguments are running. You're complaining now that you did not succeed in what you call unconfusing the jury. The other side might say you were trying to succeed in confusing the jury. Either way, you really think at this point we're in a position to retry that issue? I'm not asking this court to retry it. I'm asking the court to send it back. And the problem is... For another jury trial? Yes. I have the distinct sense that they managed... Did you handle the trial? Yes, I did. I'm sorry to say, I have the distinct sense that they managed to maneuver around you much of what your evidence was, but do you think a new trial would come out with a different result? Yes, sir, because there's got to be a way to combat this constantly evolving change in the court's construction. Well, you had that chance in trial, didn't you? I shouldn't have had the chance in trial. It was changed twice. The court construed the claims twice, and then when further changes were made, which shouldn't have been allowed in testimony, and they were made over objection, the court said, well, it's a jury issue. Well, claims construction isn't a jury issue. It's a matter of law. Do you want to save your rebuttal time, Mr. Geddes? Yes. Okay, any chats? Thank you, Your Honor. If it pleases the court, I'd like to address three issues. First of all, the issue of infringement. Secondly, the issue of the permanent injunction request by Presidio, and then also the issue of willful conduct. The review by this court is whether or not there's legally sufficient evidence supporting the jury's verdict of infringement, and there certainly is. In fact, there's three independent sources of legally sufficient evidence. Dr. Huebner testified repeatedly on direct that the 545L does, in fact, exhibit a substantially dielectric body. On cross, on two separate occasions, Dr. Huebner also testified that the 545L does, in fact, have some seams. I'd like to direct the panel to JA 990 and JA 995, where an opposing counsel directed Dr. Huebner with the highlighted version of the district's court's claim construction of substantially monolithic dielectric body. In response to looking at that very claim construction, Dr. Huebner testified about the 545L, quote, it is a dielectric body, largely, but not wholly, without seams. He did the same at JA 995. He also said, theoretically, you can not have a monolithic body. You're right, Your Honor, and I think that was going toward Dr. Huebner's opinions regarding his own beliefs as to how the term seams should have been defined. It's a critical distinction. He was very candid at trial and, frankly, believable because, in his opinion, the district court's claim construction was incorrect. In his mind, the way that term should have been defined, there would have been no seams in the 545L. But according to his examination on cross and according to the district court's claim construction, he was forced to apply that definition. And according to that definition, he repeatedly testified twice on direct and twice on cross that the 545L, in fact, has some seams and also exhibits a substantially monolithic dielectric body. Where in the record? I recall seeing something where he specifically says, I disagree with this. Very good. So first of all, at JA 990 and JA 995, he testified on cross that the 545L does, in fact, have seams. However, at JA around that same time period, JA 990, 991, he conceded that, in his own mind, he thought the district court's construction was incorrect. But he was forced to apply. And, Your Honor, you made a great point that this is one of those claim limitations that ATC proposed and not Presidio. Regardless, above and beyond that, Dr. Dougherty, ATC's own technical expert, conceded that the 545L has seams. And the key is that the claim language is substantially monolithic. He resorted to that as well, didn't he? He did, Your Honor. And that's exactly right. Substantially is unanimously held to be an appropriate claim term and used for that very purpose. And so the point is, there are multiple independent sources of evidence that each of which are legally sufficient for the jury to find on the issue of infringement. I'm sorry. I'm not good on the names. Is he the fellow who shaves away 90% of the sample? That would be ATC's expert, Dr. Dougherty. And he certainly testified on cross and he was examined on cross-examination at length that he really didn't even test this purported piece of prior art. He only did some testing after he had shaved away 90% of what it was. He didn't test this article at all. He tested a mere portion of it. If I could address the issue of injunction. The district court essentially found that there was insufficient competition warranting a finding of irreparable harm. The district court made that finding in view of its own finding and I quote, there was also substantial evidence that the BB capacitors and the 545L capacitors competed in the same one piece design market despite their differences in assertion laws. Well, as you know, we don't review opinions. We review judgments. The district court's judgment was to deny the injunction. The district court is obligated under eBay to look at a variety of factors. The district court may well have misspoke with regard to the competition question because all of us are puzzling as to how you could be competitive for one purpose but not competitive for the other. Although we often say, well, it's this for this purpose, but it's that for another purpose. So where's the error in the PI? Courts can do that. Yeah, given the fact that the district judge had to look at all four relevant factors, what is the error that would lead us to say this was a clear abuse of discretion? Sure. First of all, kind of going in backwards order, it must be noted that the district court did find that the balance of hardships favors persidio. That was a correct factual finding by the district court. But where the district court went wrong is really requiring more than just competition for a finding of irreparable harm. This court's precedent is clear that competition results in irreparable harm. And given the district court's factual findings of competition, not only competition but in the same market, and not only in the same market, but that evidence was supported by substantial evidence in the view of the district court. All that being said, let's look at what the jury did on lost profit damages. The jury was instructed that you can only find for persidio on lost profits if you find but for damages. But for ATC's infringement, persidio would have made those sales. And that is a factual finding from the jury that really needs to be evaluated here. That is the essence of competition. That is very much indicative of a two supplier market. And in those situations, this court has repeatedly held that that is not only competition because it is, but it's irreparable harm because of ATC's ongoing infringement. Was there a remedy at law? Your Honors, our position is there is not a remedy at law because of the fact that competition is indicative of irreparable harm. And so there is no remedy at law in the form of damages. It may be indicative, but it's not conclusive, is it? Your Honor, I actually Some of our precedents were before the recent Supreme Court clarification. We may or may not like the Supreme Court's clarification, but it's our law. I agree with your comment. I really do. But the problem here is, where are we going with this? We have a situation where a jury has found that but for an infringement, persidio would have made sales. And in that situation, one cannot enforce one's patent rights to exclude others. That's really a dramatic departure from where this court has been. It's hard to find a more clear instance of trespass. And when you've got trespass, the remedy is to remove the trespasser, isn't it? You're exactly right, especially given the evidence at trial that what persidio is. Persidio is a small niche player. They have built their reputation on being the solution that customers can go to when they have problems. The only supplier that customers can go to. There is undisputed evidence in the record that that is exactly what persidio is. It's a small player. Are you suggesting that if we were to uphold the denial of injunction, we would have to vacate the award of damages? Absolutely not. Absolutely not. There is ample evidence in the record supporting the lost profits finding. Independent of what we do with the injunction? You seem to be linking those two together in such a way that if we conclude with the trial judge no injunction, we may have to take away your damages award. On the contrary, that's found by the jury and almost untouchable. The injunction is an equitable remedy, isn't it? That's in the court's discretion. You're exactly right, Your Honors. And again, considering the evidence that was presented at trial, clearly there was substantial evidence, overwhelming evidence of lost profit damages and that being the only appropriate remedy here. So we could do both? You could, Your Honor. But I think, again, the factual finding of lost profit damages is very indicative and informative on the issue of competitive harm, which is irreparable. If I could move to the issue of willful infringement. The district court overturned the jury's verdict on willfulness and in doing so, necessarily had to find that there is no legally sufficient evidence supporting that verdict. That is the district court's mandate from the Ninth Circuit. In connection with that, however, there's a preliminary issue. What is the implication of this, though? The implication is if the jury's verdict is upheld, then it needs to be remanded for a potential of enhancement of damages and a finding. But that's fully within the court's discretion and if the court didn't find willfulness, do you really expect any enhancement? I absolutely do. With a finding of willfulness, that The district court elected expressly not to enhance damages or find an exceptional case solely because of the overturning of the jury's verdict of willfulness. So if that issue is upheld, then that changes the issue for the district court. If what issue? You mean the jury's finding of willfulness is upheld? That's right. If we reverse the trial, Judge, on that. That's exactly right. But you've got to satisfy Seagate. You've got to satisfy the objective prong. And that's about whether there's a reasonable defense. We're sitting up here saying there's a lot of shotgunning going on by your other side. But nevertheless, the district court gets to go through and pick out anything that she does think is reasonable. You're exactly right, Your Honor. But in looking at the I4I versus Microsoft case, where this court evaluated the subjective prong under Inouye Seagate, keep in mind that Inouye Seagate really merely deferred how the subjective prong would be played out. I4I has informative information on this very issue. And in that case, the Federal Circuit said that Microsoft, with knowledge of the patent in suit in that issue, like the situation here, what did Microsoft do? They did not take any remedial action. They did not stop with the sales. And they certainly did not do any design arounds. And that, in the Federal Circuit's mind, was sufficient for exactly what you just asked, the subjective prong under Inouye Seagate. That is exactly what we have here. It is undisputed that ATC had knowledge of the 356 patent publication, which, by the way, has virtually identical claims to the 356 patent, had knowledge of the 356 patent itself. And what did it do? It sold the 545L. It did no design around. It did no remedial action. And it certainly didn't stop. The only thing that ATC did is it unleashed its engineers on the claims of the 356 patent for the purpose of evaluating whether or not the patent is invalid and or not infringed. And those engineers testified that the claims were, quote, gibberish to them. They didn't look at them. They took no remedial action whatsoever. They didn't investigate the scope of the claims. And so they necessarily did not take any reasonable steps to avoid infringement or conclude that there was a potential for invalidity. That, keeping in mind with the evidence of copying, ATC admitted that they used the BB capacitor, which, by the way, is Presidio's most dominant and critical product, as the benchmark for the 545L. Not only that, but they admittedly emulated the 545, or they emulated the BB capacitor to arrive at the 545L capacitor. Now, there's some arguments that emulate might mean, well, simply to make it better. Well, making better as a benchmark of something is certainly evidence of copying. And in addition, a reasonable interpretation of the word emulate is to copy, to imitate. But the facts play out that, in fact, there was copying because they emulated the BB capacitor by, quote, using a metallized cube, JA6695. Please look at that, JA6695. They emulated the BB capacitor by using a metallized cube. That's exactly what the BB capacitor is. They didn't make it better. They copied exactly what it was. Before you sit down, where do you think we stand on the false marking issue? Your Honor, I'm out of time, but if I could answer your question. Please. The simple fact of the matter is this is a retroactive statute that applies all standards to this case, including the issue of competitive injury. It necessarily must be remanded at least, but only to the extent, presidio has been found liable for false marking. One comment, though, on that remand is, well, why isn't the findings on false marking simply moot in light of the statute? Well, I think, I don't know if moot is the proper term. Maybe moot is not the proper term. Simply a gone. Unenforceable. Unenforceable in light of the statute. That's a better word. I don't think that the false marking is potentially unenforceable. I think ATC has failed to prove a critical element allocated or required by the statute. Presumably, they could come back and try to do that. Presumably, they could. And that is, honestly, the appropriate thing that this court should do, should remand. But with the caveat that competitive injury, which is a new issue indoctrinated into all false marking claims now, it necessarily informs the appropriate amount of the fine. And so the amount of the fine, assuming that there was any fine found on remand, the amount of the fine should be remanded as well. In addition, They'd argue that issue because it's not before us. Well, that's right. But Your Honor, keep in mind, here, Judge Rader, I presented to you Trial Exhibit 9, which is a small baggie of capacitors. These are the products that are accused of false marking. There are 5,000 capacitors in that little baggie. That is the epitome of small, inexpensive, mass-produced products. There are 5,000 in that little baggie. There are 5,000. And it's indicative, or it brings to mind, the Force Group case, where the Federal Circuit said, it wasn't a mandate, mind you, but the district courts may have discretion that, in that situation, to award a false marking fine of half a cent. The district court awarded 70 times that amount. 70 times. And we think that the district court would be, needs to be instructed regarding that amount of the fine. Thank you, Mr. Schatz. Thank you, Your Honor. Mr. Giddes. I'll try and be very brief, Your Honor. The issue of willfulness should be clarified. Issue of what? Issue of willfulness should be clarified. Early on in this case, the trial court asked Presidio, what did ATC copy? What do you mean by should be clarified? Are you saying that we should remand it back to the trial judge? What are you asking? No, Your Honor. The court was doubtful of the willfulness issue from the beginning because the allegation that ATC copied the BB is absurd. And it's absurd for the very simple reason that the BB doesn't practice the invention. So in theory, we could have copied the BB and we wouldn't have infringed the patent. We didn't copy the BB. There was no copying because Presidio does not make a capacitor which is included within the purview of the claims of 356 patent. There was no copying. Willfulness. But your argument is even if you did copy it, that doesn't speak to the patent problem. Is that your argument? Correct. Or the willfulness. Their product is not what's in the patent. That's the argument. Correct. Or the willfulness problem. There's no issue of willfulness with copying the BB. But we didn't copy it. On the injunction, even if you have a two supplier market, unless there's damages shown by virtue of lost sales or a diversion of customers, you're still not entitled to an injunction. The jury found lost profits, meaning there had to have been lost sales, lost customers, lost market share, irreparable harm. Judge Rader, I think this case has to be viewed as snapshots in time. The trial judge said the jury could have found that there was lost profits with respect to a one piece market. The trial court also recognized that one piece market is marketing jargon. And the competitiveness issues with regard to these capacitors are their insertions. So looking prospectively, looking forward where an injunction would impact or where continuing royalties would impact, she said there is no competition. And there is not. All right. Thank you. Thank you, Mr. Gittes. Our next case.